NOT FOR PUBLICATION OR CITATION

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 09-CV-19-KKC

ROBERT REID                                                             PETITIONER

VS:                       **MEMORANDUM OPINION AND ORDER**

STEPHEN M. DEWALT, *Warden*                               RESPONDENT

       Robert Reid is incarcerated in the Federal Medical Center which is located in Lexington, Kentucky ("FMC-Lexington"). Reid filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 and has paid the $5.00 filing fee. Stephen Dewalt, the warden of FMC-Lexington, is the named respondent in this action.

       This matter is before the Court for screening. 28 U.S.C. §2243; *Harper v. Thoms*, 2002 WL 31388736, *1 (6th Cir. 2002). During screening, the allegations in the petition are taken as true and liberally construed in his favor. *Urbina v. Thoms*, 270 F.3d 292, 295 (6th Cir. 2001). As Reid is appearing *pro se*, his petition is held to less stringent standards than those drafted by attorneys. *Burton v. Jones*, 321 F.3d 569, 573 (6th Cir. 2003); *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999). Under 28 U.S.C. § 1915(e)(2), if a district court determines that the petition fails to establish adequate grounds for relief, it may dismiss the petition or make such disposition as law and justice require. *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987).

CLAIMS

Reid seeks placement in a Community Corrections Center ("CCC") for the last six months of his federal sentence, instead of a term of ninety days as determined by the Bureau of Prisons ("BOP"). Reid argues that the BOP has failed to follow the mandates of the Second Chance Act of 2007, Pub. L. No. 110-199,122, Stat. 657, codified at 42 U.S.C. § 17501 *et seq*.

Reid alleges that Warden Dewalt has violated his due process rights under the Fifth Amendment of the United States Constitution by refusing to consider him for a full six-month CCC placement in accordance with the provisions of the Second Chance Act of 2007.

EXHAUSTION

Reid has fully exhausted his claim. On August 19, 2008, Warden Dewalt denied Reid's BP-9 "Request for Administrative Remedy." Dewalt explained the denial as follows:

> This is in response to your Request for Administrative Remedy receipted August 11, 2008, in which you complain you were unfairly denied consideration for a six-month placement in a Residential Reentry Center (RRC) under the five factor criteria of the Second Chance Act of 2007.
>
> An investigation of your request reveals you were reviewed under the five factor criteria of the Second Chance Act of 2007 during your last program review. A review of your case reflects a lengthy incident report history to include Use of Drugs, Possessing Unauthorized Items, and Phone Abuse. Your instant offense of Using a Firearm in a Crime of Violence involved a bank robbery in which you brandished a firearm and wore gloves and a mask is also taken into consideration. The Bureau of Prisons authorized a transfer for you from FCI Gilmer to FMC Lexington due to your request to participate in the Residential Drug Abuse Program (RDAP) as recommended by your sentencing court. You began the RDAP on March 10, 2008, and withdrew from the RDAP on June 26, 2008. On a positive note, you have programmed by participating in numerous classes during your incarceration and in the Inmate Financial Responsibility Program. You currently have an established release residence and obtained your high school diploma. Therefore, you should have no problem reintegrating into the community. Based on your overall institutional adjustment, your instant offense, and your resources in the community, the unit team deems the recommended

2

>  placement an adequate amount of time for you to take full advantage of transitional services and programs.

[*See* Record No. 5, p. 9].

On September 12, 2008, K. M. White, Regional Director of the BOP's Mid-Atlantic Regional Office ("MARO") upheld Warden Dewalt's decision [*Id*., p.7]. White noted that the Unit Team at FMC-Lexington had reviewed Reid's eligibility for CCC placement by considering the five factors outlined in the Second Chance Act of 2007. Director White agreed with Warden Dewalt that after applying the five factors in the statute to the specific facts and circumstances of Reid's case, a 90-day CCC placement would satisfy Reid's transitional needs.

On January 5, 2009, Harrell Watts, Administrator for the National Inmate Appeals, denied Reid's final BP-11 administrative appeal [*Id*., p.4]. Watts reiterated that FMC-Lexington staff had evaluated Reid for pre-release CCC placement by considering the five factors set forth in 18 U.S.C. § 3621(b), which consideration is required by the Second Chance Act of 2007. Watts concluded that the Community Corrections Manager at FMC-Lexington did not abuse his discretion in determining that a 90-day placement in CCC would sufficiently address Reid's transitional needs.

## DISCUSSION

Reid contends that the BOP has failed to follow the procedures for CCC placement in accordance with the provisions the Second Chance Act of 2007, enacted in 2008.

### 1. CCC Placement Law Prior to April 9, 2008

Two statutes form the basis for the BOP's authority to designate the place of confinement of federal prisoners. The first, 18 U.S.C. § 3621(b), states:

3

> The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets the minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering-
>
> (1) the resources of the facility contemplated;
>
> (2) the nature and circumstances of the offense;
>
> (3) the history and characteristics of the prisoner;
>
> (4) any statement by the court that imposed the sentence-
>
>   (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
>
>   (B) recommending a type of penal or correctional facility as appropriate; and
>
> (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.
>
> In designating the place of imprisonment or making transfers under this subsection, there shall be no favoritism given to prisoners of high social or economic status. The Bureau may at any time, having regard for the same matters, direct the transfer of a prisoner from one penal or correctional facility to another.

18 U.S.C. § 3621(b).

The second relevant statute, 18 U.S.C. § 3624(c), charges the BOP with facilitating a prisoner's reentry into society. It states, in relevant part:

> The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community.

4

18 U.S.C. § 3624(c).

Prior to December 2002, the BOP allowed prisoners to be placed " 'in a CCC for more than the 'last ten per centum of the term,' or more than six months, if appropriate." *Levine v. Apker*, 455 F.3d 71, 75 (2d Cir.2006) (quoting U.S. Dept. of Justice, Federal Bureau of Prisons Program Statement 7310.04 (Dec. 16, 1998)). In December 2002, the Department of Justice Office of Legal Counsel issued a memorandum announcing a "significant procedure change" in the BOP's policy of placing offenders in CCCs for all or a significant portion of their sentences. *United States v. Sherpa*, 251 F. Supp.2d 988, 990 (D. Mass.2003) (internal quotation omitted).

The 2002 memorandum concluded that § 3621 did not confer general authority on the BOP to place an offender in a CCC at any time or for any period of time. Instead, the memorandum concluded that the BOP's authority to place an offender in community confinement derived solely from § 3624(c), which limits the time an offender may be placed in a CCC to the lesser of six months or ten percent of the offender's sentence. *See Woodall v. Bureau of Prisons*, 432 F.3d 235, 240 (3d Cir.2005).

On December 20, 2002, the BOP adopted a new policy reflecting the Office of Legal Counsel's position that inmates may only be released to community confinement for the last ten percent of their terms of imprisonment or six months, whichever is shorter. *See id*.

Shortly after the BOP's adoption of this new policy in December 2002, offenders nationwide filed a flurry of lawsuits challenging its validity. The First and Eighth Circuit Courts of Appeals found this 2002 policy unlawful because it limited the BOP's discretion to transfer offenders to a CCC, restricting transfer only to the last 10 % of an offender's sentence or six months, in contravention of the plain meaning of § 3621(b), which grants general authority to

5

the BOP to transfer prisoners at any time during their term of incarceration after an individualized determination of the appropriateness of a transfer based upon certain enumerated factors. *Elwood v. Jeter*, 386 F.3d 842 (8th Cir.2004); *Goldings v. Winn*, 383 F.3d 17 (1st Cir.2004).

In response to these decisions, the BOP adopted new rules regulating CCC placement, effective February 14, 2005.[1] The regulations, 28 C.F.R. §§ 570.20 and 570.21, were announced as a "categorical exercise of discretion [by the BOP] for designating inmates to community confinement." 28 C.F.R. § 570.20. The regulations categorically denied CCC placement to any inmate not in the lesser of the last 10 % or six months of his sentence, except under certain limited, enumerated circumstances:

> (a) The Bureau will designate inmates to community confinement only as part of pre-release custody and programming, during the last ten percent of the prison sentence being served, not to exceed six months.
>
> (b) We may exceed these time-frames only when specific Bureau programs allow greater periods of community confinement, as provided by separate statutory authority for example, residential substance abuse treatment program (18 U.S.C. § 3621(e)(2)(A)), or shock incarceration program (18 U.S.C. § 4046(c)).

28 C.F.R. §§ 570.21.

Several courts in this circuit held the BOP's policy of categorically excluding placement in community confinement until the last ten percent or six months of a prisoner's sentence is contrary to congressional intent and that the BOP must apply the factors in 18 U.S.C. § 3621(b) when considering CCC placement. *See Luckett v. Eichenlaub*, 2007 WL 3124666 (E. D. Mich.

---

[1] The United States District Court for the District of Massachusetts described the 2005 rules as follows: "[T]he BOP adopted a set of rules in January, 2005 adopting much the same policy [as that expressed in the 2002 rules] but anchoring it to a different theory." *Muniz v. Winn*, 462 F. Supp.2d 175 (D. Mass.2006).

Oct.24, 2007); *Halter v. Eichenlaub*, 2007 WL 2873944 (E. D. Mich. Sept. 25, 2007); *Weirup v. Eichenlaub*, 2007 WL 2300715 (E. D. Mich. Aug. 7, 2007); *Holloway v. Marberry*, 2007 WL 1880386 (E.D. Mich. June 27, 2007).

2. Second Chance Act of 2007

Congress recently amended 18 U.S.C. § 3624(c)(1) through the enactment of the Second Chance Act of 2007, Pub. L. No. 110-199, which was enacted on April 9, 2008. The Second Chance Act of 2007 amends 18 U. S. C § 3624(c)(1) to provide that the Director of the BOP shall "ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community." Second Chance Act § 251, 122 Stat. at 692.

One court recently explained the impact of the Second Chance Act by stating as follows:

> Relevant to the issues presented here, the Act amended 18 U.S.C. § 3624(c). Amended section 3624(c)(1) authorizes the BOP to consider placing an inmate in an RRC for up to the final 12 months of his or her sentence, rather than the final six months that were available pre-amendment. Amended section 3624(c)(4) also states that nothing in section 3624 "shall be construed to limit or restrict the authority of the Director or of the Bureau of Prisons under [18 U.S.C. § 3621, the statute empowering the BOP to take a convict into custody and designate a place of imprisonment.]" The Act requires the BOP to issue new RRC regulations within 90 days. 18 U.S.C. § 3624(c)(6) (amended).
>
> In accordance with the Second Chance Act, on April 14, 2008, the BOP issued an interim policy memorandum on RRC placement considerations. The memorandum states that the "categorical timeframe limitations on prerelease community confinement" found in 28 C.F.R. §§ 570.20 and 570.21 (i.e., the ten percent limit that Petitioner challenges in this petition) "are no longer applicable and must no longer be followed." The memorandum further requires that RRC placement decisions be made on an individual basis with reference to the five-factor criteria set out in section 3621(b). Inmates previously denied RRC

7

placement, such as Petitioner, were to be reconsidered under the standards set out in the memorandum.

*Montes v. Sanders*, 2008 WL 2844494, at *1 (C. D. Cal. July 22, 2008). *See also Miller v. Whitehead*, 527 F.3d 752, 755 (8th Cir.2008) ("In reaction to this statute, and the new 12-month maximum placement, the BOP issued guidance directing that 'inmates must now be reviewed for pre-release RRC placements 17-19 months before their projected release dates.'")

3. Application of Second Chance Act to Reid's case

According to the Bop's website, www.bop.gov, Reid's release date is October 21, 2009. Reid seeks a six-month CCC placement, which would purportedly begin on April 21, 2009. The BOP has determined that a 90-day CCC placement will satisfy Reid's transitional needs.

The Court must agree with Warden Dewalt, Director White, and Administrator Watts that in evaluating Reid's specific transitional needs, the BOP has complied with the requirements of the Second Chance Act of 2007. The BOP's interim policy memorandum on CCC placement consideration, which resulted from the newly enacted statute, requires that CCC placement decisions be made on an individual basis with reference to the five-factor criteria set out in 18 U.S.C. § 3621(b), which provides as follows:

> (b) Place of imprisonment.--The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering--
>
> (1) the resources of the facility contemplated;
>
> (2) the nature and circumstances of the offense;
>
> (3) the history and characteristics of the prisoner;

8

    (4)  any statement by the court that imposed the sentence--

      (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or

      (B) recommending a type of penal or correctional facility as appropriate; and

    (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

It is clear from review of the record that Warden Dewalt evaluated Reid's need for CCC placement in accordance with the criteria set forth in § 3621(b), as required by the Second Chance Act of 2007. In his August 19, 2008, response to Reid's BP-9 "Request for Administrative Remedy," Warden Dewalt discussed the nature of the offense, as required by § 3621(b). Warden Dewalt noted that Reid had been convicted of using a firearm in connection with a bank robbery, in which he had worn a mask and gloves.

Warden Dewalt further discussed Reid's history and characteristics, as required by § 3621(b). He stated that the BOP had considered the fact that Reid had participated in BOP rehabilitative programs, such as the Inmate Financial Responsibility Program. Warden Dewalt further noted that Reid had obtained his high school diploma. Warden Dewalt concluded after consideration of these factors, Reid's institutional adjustment, and his resources in the community, a 90-day CCC term would satisfy Reid's transitional needs.

Clearly, neither the Second Chance Act of 2007, nor 18 U.S.C. § 3621 (b) automatically entitle any prisoner, including Petitioner Reid, to either a six-month or a twelve-month CCC placement term. As noted in *Montes v. Sanders*, while the BOP has the authority to place a prisoner in a CCC for a period of time not exceed twelve months, the BOP is not *required* to place an inmate in a CCC for up to the final 12 months of his or her sentence. The change in the

statue *authorizes* a longer term (twelve months as opposed to six) in a CCC where the relevant criteria is met on an individual basis. The Second Chance Act does not, however, *mandate* that every federal prisoner is entitled to twelve-months, or even six-months, in pre-release CCC status. *See Montes*, 2008 WL 2844494, at *1 (C. D. Cal. July 22, 2008).

Although decided prior to the enactment of the Second Chance Act of 2007, the Tenth Circuit, in an instructive opinion, addressed a similar claim by a federal inmate who demanded placement in a CCC earlier than the date set by the BOP. In *Wedelstedt v. Wiley*, 477 F.3d 1160 (10th Cir. 2007), the court examined the earlier version of § 3624(c) and concluded that Wedelstedt's remedy was limited only to the BOP being required to *consider* him for a transfer to a CCC for the last ten percent of his sentence. *Wedelstedt*, 477 F. 3d at 1168. The relevant language from the *Wedelstadt* opinion reads as follows:

> In determining whether Wedelstedt should be transferred, the BOP must consider the factors set forth in 18 U.S.C. §3621(b) without regard to the invalid regulations. **This court, however, takes no position on whether Wedelstedt should be transferred and, as Wedelstedt himself acknowledges, he has no entitlement to such a transfer.** .

*Id*. S*ee also Elwood v. Jeter*, 386 F.3d 842, 846-47 (8th Cir. 2004) (although the BOP has the *authority* to place a prisoner in a CCC for more than the final 10% of his sentence, the BOP is not *required* to do so); *Woodall v. Fed. Bureau of Prisons*, 432 F.3d 235, 251 (3d Cir.2005) ("We have held that the BOP may transfer an inmate to a [CCC] or like facility prior to the last six months or ten percent of his sentence. In exercising its discretion in this matter, the BOP must consider the factors set forth in § 3621(b). **However, that the BOP may assign a prisoner to a [CCC] does not mean that it must**. Therefore, the appropriate remedy is an order requiring

the BOP to consider-in good faith-whether or not [petitioner] should be transferred to a [CCC]...."), his habeas corpus petition must be dismissed as moot.") (Emphasis added).

Reid has no constitutional right to serve his sentence in a facility more to his choosing. *See also Ogunyale v. Phillips*, 2008 WL 1820652 (N. D. W. Va., April 22, 2008) (Slip Copy) (prisoner is not entitled to a specific amount of time in a halfway house; rather, a prisoner is entitled only to have the BOP *consider* his application for CCC placement in accordance with the five factors set forth in § 3621(b)).[2]

Congress has vested the BOP "with the right to exercise complete and absolute discretion in matters relating to the incarceration and classification of lawfully convicted prisoner," 18 U.S.C. §3621; *Moody v. Daggett*, 429 U.S. 78, 88 (1976); and *Beard v. Livesay*, 798 F.2d 874 (6th Cir. 1986). There is no constitutional or inherent right of a convicted person to be released before the expiration of a valid sentence. *Greenholtz v. Inmates of Nebraska Penal & Correctional Complex*, 442 U.S. 1, 7, 99 S. Ct. 2100 (1979).

The Due Process Clause of the United States Constitution does not confer any right upon an inmate to any particular custody or security classification. *Moody v. Daggett*, 429 U.S. at 88; *Montanye v. Haymes*, 427 U.S. 236, 242 (1976). Inmates do not have a liberty interest in

---

[2] *See Rodriguez v. Smith*, 2007 WL 628663, *8 (E. D. Cal.) ("To the extent that Petitioner requests an immediate transfer to an RRC, his request should be denied. The remedy in this case is not an immediate transfer; rather, Petitioner's remedy is a proper exercise of discretion by Respondent."), adopted by, 2007 WL 1101474 (E. D. Cal.), *affirmed by Rodriguez*, 541 F.3d at 1187; *Montes v. Sanders*, 2008 WL 2844494, *2 (C. D.Cal.) ("Petitioner sought the invalidation of the categorical ten percent limitation of 28 C.F.R. § 570.21. That end has been accomplished by passage of the Second Chance Act and the BOP's memorandum instituting an interim policy conforming to the Act. Petitioner also sought an individualized determination of his eligibility for transfer to an RRC facility.... By virtue of the reconsideration provided to him under the dictates of the Second Chance Act ..., he has been afforded just that.... In short, Petitioner has received, through legislative and administrative action, all of the relief that he might have been entitled to had such action not been taken. Continuing jurisdiction over this petition would violate the constitutional requirement that there be a live 'case' or 'controversy.' ");

11

retaining or receiving any particular security or custody status "[a]s long as the [challenged] conditions or degree of confinement is within the sentence imposed ... and is not otherwise violative of the Constitution."  *Hewitt v. Helms,* 459 U.S. 460  at 468, (1983); *Olim v. Wakinekona*, 461 U.S. 238, 245, 103 S.Ct. 1741 (1983);  *Meachum v. Fano*, 427 U.S. 215, 225, (1976); *Montanye v. Haymes*, 427 U.S. at 242; *Marchesani v. McCune*, 531 F.2d 459 (10th Cir.), *cert. denied*, 429 U.S. 846 (1976)*; Bolger v. U.S. Bureau of Prisons*, 65 F.3d 48 (5th Cir.(Tex.) 1995).

Reid has no due process right, protected by the Fifth Amendment, to be placed in a CCC earlier than earlier than the date on which the BOP assigns him - - as long it has considered the factors set forth in § 3621(b) as required by the Second Chance Act of 2007.  The statute was enacted on April 9, 2008.  Reid did not submit his BP-9 until August 11, 2008, four months *after* enactment of the statute. Warden Dewalt states that in Reid's case, the factors set forth in § 3621(b) were applied to the specifics of Reid's case as required by the new statute.

Finally, the Court notes that according to Warden Dewalt, Reid withdrew from the Residential Drug Abuse Program ("RDAP") in June of 2008, after having been enrolled for a little over three months. The RDAP is a program through which certain federal inmates receive various incentives for involvement in drug abuse treatment programs.  28 C.F.R. § 550.57.  The BOP has discretion to allow an inmate a sentence reduction of up to one year if the inmate was convicted of a nonviolent offense and has successfully completed a substance abuse treatment program. 18 U.S.C. § 3621(e)(2)(B).

Assuming that Warden Dewalt is correct on this issue, Reid voluntarily withdrew from a program that might have resulted in a one-year sentence reduction, yet he now demands to be

placed in a CCC for six months. Reid's decision to withdraw from the RDAP would have been an additional factor in evaluating Reid's term of placement in a CCC (*See* Subsection (3) of § 3621(b), "the history and characteristics of the prisoner.")

The Court finds that Warden Dewalt and the Unit Team at FMC-Lexington properly applied the Second Chance Act of 2007 to Reid's case. They did not abuse their discretion in determining that Reid's transitional needs could be met by a 90-day CCC placement as opposed to a six- month CCC placement term.

### CONCLUSION

Accordingly, the Court being advised, **IT IS ORDERED** as follows:

(1)     Petitioner Robert Reid's petition for writ of habeas corpus [Record No. 2] is **DENIED** and this action will be **DISMISSED** without prejudice from the docket of the Court.

(2)     Judgment shall be entered contemporaneously with this Memorandum Opinion and Order in favor of the named respondent.

Dated this 11th day of February, 2009.



Signed By:
*Karen K. Caldwell*
**United States District Judge**

13